**Opinion issued November 26, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-12-00991-CV**

———————————

**REBECCA EVANS, Appellant**

**V.**

**ROBERT RANDALL SIRES, SR., Appellee**

—————————————————————————————

**On Appeal from the 311th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-67562**

—————————————————————————————

**MEMORANDUM OPINION**

Rebecca Evans challenges the trial court's dismissal of her bill of review proceeding, by which she sought to set aside the trial court's 2004 Final Order in the underlying SAPCR. Evans contends the trial court erred by dismissing her bill of review without a hearing on the merits, and she also complains that the trial

court, in the 2004 Final Order (1) improperly calculated the amount of child support payments and arrearages she owed, and (2) improperly ordered that her visitation with the child be conducted through the Harris County SAFE program. Because Evans entered into an MSA in which she agreed to dismiss the bill of review and agreed to the terms of a 2012 order modifying the 2004 order, we conclude that the trial court committed no error, and, accordingly, we affirm.

## Background

On June 7, 2004, the trial court entered a default judgment in a SAPCR case against Evans ("2004 Final Order"). The 2004 Final Order appointed Robert Randal Sires, Sr., the child's father, as Sole Managing Conservator and Evans as Possessory Conservator of their child. It restricted Evans's possession and access to the child, reciting that Evans's access to the child would take place "under such terms and conditions as are mutually agreed to, in writing, in advance, by the parent Sole Managing Conservator . . . [and] in the parent Sole Managing Conservator's sole discretion, may be under the supervision of the SAFE supervised visitation program." The 2004 Final Order required Evans to pay child support in the amount of $575 per month and arrearages in the amount of $3,162.50, which she was required to pay in installments of $100 per month. Evans made no payments for the next seven years, but did make 22 payments between September 2011 and September 2012.

2

On November 8, 2011, Evans filed a petition for bill of review of the 2004 Final Order. In it, Evans requested that the trial court vacate the 2004 Final Order, on the basis that she received no notice of the June 7, 2004 trial setting. Sires then moved to enforce the 2004 Final Order.

On June 4, 2012, the parties entered into an MSA. The MSA reduced the amount of Evans's future monthly child support payments to $421.50 per month. With regard to arrearages, it stated the parties' agreement to reduce the amount Evans owed if Evans provided Sires's attorney, within a specified timeframe, with certain evidence of Evans's historical income. The MSA stated:

> The parties agree that the amount of the arrearage shall be calculated to reflect the amount of periodic child support Mother would have been ordered to pay during the relevant period had she been ordered to pay based on her actual income, but without calculating amounts for medical insurance and/or unpaid medical expenses. In this regard, Mother's attorney shall provide Father's attorney with true and correct copies of Mother's Federal Income Tax information from the IRS for the years 2003 through 2011, and the amount of child support due each year shall be the Texas Family Code Guideline child support based on Mother's actual gross income for each year as reflected in the tax information with the standard deductions for Federal Income Taxes, Social Security Taxes and FICA as per the TFC child support tax tables . . . Mother shall provide the referenced tax information within 75 days of this date. If said tax information is not provided to Father's attorney within 75 days of this date, then Father shall have the option of withdrawing his consent to this agreement regarding arrearages.

3

In exchange, Evans agreed in the MSA to dismiss the bill of review. She also agreed that provisions of the 2004 Final Order requiring visitation through SAFE would not be modified.

On August 21, 2012, Sires's counsel wrote Evans's counsel, contending that Evans had failed to provide the required tax information for 2003, 2004, and 2006, and that this constituted "a breach of the MSA requirement to furnish the Father true and correct copies of her Federal Income Tax information from the IRS for years 2003 through 2011." Accordingly, Sires was "exercise[ing] his option of withdrawing his consent to the agreement regarding arrearages."

On September 10, 2012, Sires moved for judgment on the MSA. On September 17, 2012, the trial court held a hearing on that motion. Sires sought judgment on the MSA, except for the provision regarding the modification of arrearages. With regard to that provision, Sires argued that Evans breached by failing to present tax information for the years 2003 through 2011 and that Sires was therefore entitled to revoke his agreement to reduce the amount of arrearages owed.

Evans responded that there was no breach because she provided information that existed. She claimed that there was no tax information available, "there was no filing of any type of return," for the years for which she failed to provide information to Sires, 2003, 2004, and 2006. Sires introduced an IRS verification of

4

non-filing reflecting that the IRS "found no record of a tax return being filed for year(s) 2004 & 2006." With regard to 2003, however, the document stated that the IRS was "unable to verify non-filing for tax year(s) 2003 because a return was filed."

The trial court concluded that Evans failed to perform as agreed, giving Sires the right to exercise his option to withdraw his agreement to reduce the amount of arrearages owed. It concluded the total amount of arrearages owed under the terms in the 2004 Final Order was $46,862.50, ordered that arrearages be paid at $100 a month, as set out in the 2004 Final Order, and "approve[d] all the remaining provisions of the Mediated Settlement Agreement." The trial court dismissed the bill of review proceeding by order dated September 19, 2012, which states that the case was dismissed because "the parties Mediated Settlement Agreement contemplates dismissal of the Plaintiff's Bill of Review." Evans appealed.

## Discussion

### A.      Standard of Review

Whether a party is entitled to enforcement of an MSA is a legal question, which we review de novo. *Boyd v. Boyd*, 67 S.W.3d 398, 404 (Tex. App.—Fort Worth 2002, no pet.).

## B.   Applicable Law

In suits affecting the parent-child relationship, an MSA is binding on the parties and irrevocable if the agreement (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation, (2) is signed by each party to the agreement, and (3) is signed by the party's attorney. TEX. FAM. CODE § 153.0071(d) (West 2008); *In re Lee*, No. 11-0732, 2013 WL 5382067, at \*6 (Tex. Sept. 27, 2013).  If an MSA meets these statutory requirements, "a party is entitled to judgment on the mediated settlement agreement notwithstanding . . . another rule of law."   TEX. FAM. CODE § 153.0071(e); *In re Lee*, 2013 WL 5382067, at \*6; *In re L.M.M.*, 247 S.W.3d 809, 811 (Tex. App.—Dallas 2008, pet. denied).  A trial court must enforce an MSA that meets these requirements unless a party demonstrates that the MSA was illegal or was procured by fraud, duress, coercion, or other dishonest means. *Boyd*, 67 S.W.3d at 403.

## C.   Analysis

Evans appeals from the trial court's order dismissing her bill of review.  In her brief, Evans argues that the trial court erred by (1) ordering that she pay $575 per month in child support in 2004;[1] (2) ordering visitation be held through the SAFE program; and (3) failing to reduce the amount of arrearages she owed, as

---

[1]    In the trial court's October 26, 2012 order, the monthly child support obligation was reduced to $421.50 per month, per the terms of the MSA.

6

contemplated by the MSA, despite the fact that she provided Sires with some tax records to justify the reduction.

But Evans ignores the fact that she agreed, in the MSA, to dismiss the bill of review and that the MSA gave Sires the option to revoke the agreement to reduce the arrearages if Evans failed to produce information reflecting her historical income. Evans's appeal thus turns on whether the trial court properly entered judgment on the MSA.

### 1. The MSA is enforceable.

An MSA affecting the parent-child relationship is binding and a party is "entitled to judgment" on the MSA if each party and the parties' attorneys who are present at the mediation sign it, and the MSA states prominently and in emphasized type that it is not subject to revocation. TEX. FAM. CODE § 153.0071(d)–(e). Here, it is undisputed that the MSA meets these requirements. Page 4 of the MSA stated in boldfaced, underlined, and capital letters that "**THIS AGREEMENT REACHED IN MEDIATION IS BINDING AND IS NOT SUBJECT TO REVOCATION**." And the MSA is signed by each party and by each party's attorney. Evans does not contend and presents no evidence that the MSA was illegal or was procured by fraud, duress, coercion, or other dishonest means. Accordingly, we hold that the trial court did not err in enforcing the MSA. *See* TEX. FAM. CODE § 153.0071(d); *In re L.M.M.*, 247 S.W.3d at 811–12

7

(concluding MSA met statutory requirements of section 153.0071(d) where MSA stated in bold, underline, and all capital letters that MSA was binding, not subject to revocation, and enforceable).

## 2. The trial court entered judgment in accordance with the MSA.

The bill of review was the vehicle by which Evans sought to challenge the provisions of the 2004 Final Order requiring (1) payment of child support at $575 per month and (2) visitation under the SAFE program. But, the MSA provided that Evans's bill of review would "be dismissed contemporaneously with the signing by the Court of the Modification Order which contains the agreements reached herein." Because Evans is bound by the MSA, and the MSA provides for dismissal of the bill of review, we conclude the trial court did not err in dismissing Evans's bill of review pursuant to the MSA's terms.

Because she agreed in the MSA to dismiss that proceeding, and, with it, her challenges to the 2004 Final Order, we do not review the propriety of the child support and visitation provisions of the 2004 Final Order.

## 3. Arrearages

Evans also challenges the provision of the 2012 Modified Order that requires her to pay $46,862.50 in arrearages. She asserts that based on her actual income from 2003 to 2011, the total amount of arrearages should be $27,634, and that the trial court erred in failing to hold Sires to his agreement in the MSA to reduce

8

arrearages. We construe this as a challenge to the trial court's finding that Evans breached the provision of the MSA in which she agreed to provide historical information regarding her income.[2]

At the hearing on Evans's motion for judgment on the MSA, Evans's counsel argued that Evans complied by providing an IRS form stating the IRS had no records of Evans filing a tax return for 2004 and 2006. But, based on the same document, which reflected that Evans did file a 2003 return—and the fact that she failed to provide it to Sires—the trial court could have reasonably concluded that Evans breached and had no right to enforce the contemplated reduction in arrearages, and thus remained liable for arrearages in the amount set forth in the 2004 Final Order, which, by 2012, totaled $46,862.50.

Accordingly, we conclude that the trial court did not err in ordering Evans to pay arrearages in the amount of $46,862.50.

---

[2] Evans did not file a notice of appeal from the SAPCR case, but we address this issue because of the significant overlap in the two cases. *See P&A Real Estate, Inc. v. Am. Bank of Texas*, 323 S.W.3d 618, 620 (Tex. App.—Dallas 2010, no pet.) (concluding notice of appeal from default judgment effective when filed under wrong cause number).

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.